**NCH CORPORATION,**
**Plaintiff-Appellant,**

v.

**SHARE CORPORATION, etc.,**
**Defendant-Appellee.**

No. 84–1141.

United States Court of Appeals,
Fifth Circuit.

April 22, 1985.

Rehearing and Rehearing En Banc
Denied May 22, 1985

Royal H. Brin, Jr., Larry R. Margolies, Dallas, Tex., for plaintiff-appellant.

Fox, Carpenter, O'Neill & Shannon, S.C., Bruce C. O'Neill, Milwaukee, Wis., for defendant-appellee.

Before GARZA, POLITZ and DAVIS, Circuit Judges.

GARZA, Circuit Judge:

NCH Corporation ("NCH") brought this diversity action under Texas law against Share Corporation ("Share") seeking damages and injunctive relief. NCH's complaint alleged several theories of recovery, each of which stemmed from the allegation that Share had hired NCH employees who were working under contracts which contained covenants not to compete. At the close of the plaintiff's case, the trial court granted Share's motion for directed verdict. NCH brought this appeal. Finding that NCH's contentions on appeal lack merit, we affirm.

### Background

NCH is a Delaware corporation with its principal place of business in Dallas, Texas. Share is a Wisconsin corporation with its principal place of business in Milwaukee. Share and NCH are competitors, both engaged in the business of distributing and selling chemical specialty products. Sales are made primarily to industrial and institutional users through commissioned sales representatives. Virtually any business is a potential purchaser of the products sold by Share and NCH.

NCH is composed of five divisions, and sells its products, under different labels, on an international scale. Prior to the commencement of employment, all NCH sales representatives are required to sign employment contracts. While these contracts do not state a definite term of employment, they do state the territory in which the sales representative is to work. The contracts also contain several restrictive post-employment covenants, including a covenant not to compete.

Share hired a number of NCH sales representatives between 1979 and 1982. These employees continued to sell Share products in the same areas in which they had previously sold NCH products. Share did not have a policy against hiring sales representatives away from its competitors. To the contrary, approximately forty to fifty percent of Share's sales force had previously worked for one of Share's competitors. Share's management was also aware that NCH sales representatives worked under contracts containing covenants not to compete. In several instances, Share agreed to indemnify new employees for the amount of any money judgment rendered as a result of having violated a post-employment covenant not to compete.

In October, 1982, NCH brought suit against Share seeking recovery for damages allegedly sustained from having lost employees to Share, and to enjoin Share from continuing to hire its employees and permit them to work in the areas they had covered while employed by NCH. NCH's complaint alleged causes of action for tortious interference with contractual relations, unfair competition, misappropriation and conversion of trade secrets, common law conspiracy, and tortious interference with economic and business opportunities. The complaint named specifically eight NCH employees who had been hired by Share to sell Share's products in the same areas in which they had previously sold NCH products.[1]

Although the employees named in the complaint were employed by different divisions of NCH, and their contracts varied

slightly, the covenants not to compete were substantially the same. The covenants provided that following termination of employment with NCH, the employee could not sell products similar to those sold by NCH within the same territory assigned to the employee during his tenure with NCH. While each of these employees were named in NCH's complaint, none were named as parties to the suit.

The case was tried to a jury. At the close of the plaintiff's case, however, the trial court directed a verdict in favor of Share. The primary basis for this ruling was that the covenants not to compete were, as a matter of law, unenforceable and against public policy; consequently, any violation of the covenant could not form the basis of an action for damages against Share.[2] On appeal, NCH does not suggest that the trial court erred in rejecting all of NCH's theories of recovery; rather, it limits its argument to the propriety of the reasons given by the trial court for granting Share's motion for directed verdict.

### Discussion

NCH contends that the trial court erred in concluding that the covenants not to compete involved here were unreasonable, and therefore unenforceable under Texas law. A covenant not to compete is unreasonable and should not be enforced if "it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer." *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d

---

1. After discovery efforts were made, NCH learned that a total of over twenty former NCH employees had been hired by Share. The trial court excluded any evidence concerning employees other than those named in the original complaint. Similarly, the trial court excluded evidence of other prior litigation involving Share's hiring practices. As our disposition of this case is based on the invalidity of the contracts involved, we need not reach the issue of the propriety of these evidentiary rulings.

2. NCH asserts that the trial court erred in directing a verdict for Share because there was sufficient evidence to raise fact issues concern-

ing the elements of an action for tortious interference with contracts. Whether a covenant not to compete is reasonable, however, is a legal question for the court. *Henshaw v. Kroenecke*, 656 S.W.2d 416, 419 (Tex.1983). The trial court ruled correctly that the covenants involved in this case were unreasonable and could not provide the basis of an action for tortious interference; this ruling was determinative of the tortious interference action. Because there were no remaining fact questions for the jury, there was no error in directing a verdict in favor of Share.

950, 951 (1960). "The period of time during which the restraint is to last and the territory that is included are important factors to be considered in determining the reasonableness of the agreement." *Id.* 340 S.W.2d at 951. While we agree with NCH that an eighteen month period is reasonable under these facts, we are not persuaded that the reasonable territory requirement is satisfied. Each of the covenants involved here attempted to prohibit the employee from selling chemical products within the same territory assigned to him while employed by NCH. In several instances, the territories involved covered a number of counties within a given state; two of the covenants prohibited similar post-employment sales for a distance of forty-five miles beyond the territory stated in the contract. More important, no effort was made to limit this prohibition only to customers with whom the sales representative had dealt during his employment with NCH. In this respect the covenants were clearly in excess of what was required to protect NCH's business and good will. Given the geographic magnitude of the areas covered, and the number of potential purchasers within any given territory, we are in agreement with the trial court that the covenants were unreasonable as a matter of law. *See USAchem, Inc. v. Goldstein,* 512 F.2d 163, 168 (2d. Cir.1975) (applying Texas law in action brought by corporate predecessor of NCH; territory-wide restrictive covenant held overly broad and unenforceable).

NCH next contends that the unenforceability of the covenants not to compete as between NCH and its employees should not serve to bar its tortious interference with contract action against Share. NCH contends that under Texas law, such an action will lie regardless of the validity of the underlying contract. In support of this proposition, NCH cites a line of cases beginning with *Clements v. Withers,* 437 S.W.2d 818 (Tex.1969).

■ *Clements* involved an action for tortious interference with a real estate listing agreement that was unenforceable (as between the parties to the agreement) because it did not satisfy the requirements of the statute of frauds. The court held that the unenforceability of the contract was no defense to the action for tortious interference. *Id.* at 821. A number of other Texas cases have relied on *Clements* for the proposition that a contract unenforceable under the statute of frauds will support an action for tortious interference against a third party.[3] In *Clements,* however, the court noted that a contract which is deficient under the statute of frauds "is not a void or illegal contract, nor is there any public policy opposing its performance." *Id.* Thus, while a contract voidable under the statute of frauds will support a suit for tortious interference, the same result does not obtain where a contract is void as illegal or against public policy. *See Guaranty Bk. (So. Oak Cliff Bk.) v. National Sur. Corp.,* 508 S.W.2d 928, 929, 932 (Tex.Civ. App.—Dallas 1974, writ ref'd., n.r.e.) (contract which would have required breach of trustee's fiduciary duty could not form basis of action for tortious interference); RESTATEMENT (SECOND) OF TORTS § 774 (1977) (no liability for interference with illegal agreement or agreement effecting violation of public policy).

■ Unreasonable covenants not to compete are unenforceable under Texas law "because of the public policy against restraints of trade and the hardships resulting from interference with a person's means of livelihood." *Bob Pagan Ford, Inc. v. Smith,* 638 S.W.2d 176, 178 (Tex. App.—Houston [1st Dist.] 1982, no writ); *Custom Drapery Co., Inc. v. Hardwick,* 531 S.W.2d 160, 164 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). As written, the covenants not to compete contained in the NCH employment contracts are unreasonably broad, and unenforceable as viola-

---

3. *See, e.g., Consolidated Petroleum Industries v. Jacobs,* 648 S.W.2d 363, 367 (Tex.App.—Eastland 1983, writ ref'd., n.r.c.); *Speer v. Continental Oil Co.,* 586 S.W.2d 193, 194 (Tex.Civ.App.—East-land 1979, writ ref'd., n.r.e.); *Panama-Williams, Inc. v. Lipsey,* 576 S.W.2d 426, 434 (Tex.Civ.App. —Houston [1st Dist.] 1978), *aff'd,* 611 S.W.2d 917 (Tex.Civ.App.1981).

tive of public policy. Thus, *Clements v. Withers* does not prevent Share from asserting the unenforceability of the contracts as a defense to NCH's tortious interference action. *Cf. Guaranty Bk. (So. Oak Cliff Bk.)*, 508 S.W.2d at 932.

 NCH next argues that unreasonableness does not render void a covenant not to compete; rather, under Texas law, such an agreement can be reformed and enforced to the extent that it is reasonable. This rule would be applicable had NCH brought suit against its former employees to enjoin further violations of the covenants not to compete. Had that been the case, under Texas law, the court would have had equitable power to reform and enforce the contracts "by granting an injunction restraining the [employees] from competing for a time and within an area that are reasonable under the circumstances." *See Weatherford Oil Tool Company*, 340 S.W.2d at 952. Reformation, an equitable remedy, is not available to a party seeking money damages for a violation of a covenant not to compete. *Id.* at 953. With regard to violations of the covenants not to compete in this case, NCH's action was an action at law for money damages. There is no Texas authority for the proposition that a court may reform a contract which is void as illegal or against public policy, and then permit the reformed agreement to form the basis of an action for money damages based on tortious interference. Indeed, such a result would be completely incongruous with the Texas rule that in an employer's suit for money damages based on a former employee's breach of a post-employment restrictive covenant, the covenant "must stand or fall as written." *Frankiewicz v. National Comp. Associates*, 633 S.W.2d 505, 507 (Tex.1982) (citing *Weatherford Oil Tool Company*, 340 S.W.2d at 953). We conclude, therefore, that the contracts, which were unenforceable as written, could not support NCH's action against Share for money damages based on tortious interference.

For the reasons set forth above, the decision of the district court is

AFFIRMED.