**HI–LINE ELECTRIC COMPANY,**
Plaintiff-Appellee,

v.

**DOWCO ELECTRICAL PRODUCTS,**
Defendant-Appellant.

No. 84–1245.

United States Court of Appeals,
Fifth Circuit.

July 25, 1985.

**1360**

Jack R. Bailey, Pete W. Weston, Houston, Tex., for defendant-appellant.

Robins, Zelle, Larson & Kaplan, Michael Sean Quinn, Dallas, Tex., for plaintiff-appellee.

Before GEE, POLITZ, and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Hi-Line Electric Co. (Hi-Line) instituted this diversity action, seeking injunctive relief and damages for DowCo Electrical Products' (DowCo) alleged tortious conduct. After a bench trial, the district court found for Hi-Line and granted the requested relief. The district court premised its award of damages on the conclusion that DowCo could be held liable in tort for inducing Hi-Line's employees to breach an unenforceable covenant not to compete contained in the employment contracts between those employees and Hi-Line. We reverse.

I.

Hi-Line is in the business of selling a variety of electrical supplies to construction contractors, retail stores, and various other consumers of electrical products. At the time Hi-Line initiated this suit, it employed eighty people and operated in seventeen states. Most of Hi-Line's sales were attributable to its commission-paid field personnel who sold Hi-Line products directly from the trucks they operated. As a condition of employment with Hi-Line, all employees were required to sign employment contracts that contained, in part, a covenant not to disclose trade secrets[1] and a three-year covenant not to compete.[2]

One of the states in which Hi-Line sold its products was Florida. From January 18, 1982, to April 27, 1983, Hi-Line employed Robert Dowling as one of its Florida salesmen. While employed by Hi-Line,

---

1. In pertinent part, this provision of the employment contract provided:

   The employee, during the term of employment under this agreement, will have access to and become familiar with various trade secrets, consisting of: highly secret and confidential formulas, patterns, devices, secret inventions, processes and compilations of information, records, customer lists, sources of supply, methods, and specifications, which are owned by the employer and which are used in the operation of the business of the employer. The employee shall not disclose any of the aforesaid trade secrets, directly or indirectly, nor use them in any manner, either during the life of this agreement or at any time thereafter, except as required in the course of his employment. All files, records, documents, drawings, specifications, equipment, customer lists and similar items relating to the business of the employer, whether prepared by the employee or otherwise coming into his possession, shall remain the exclusive property of the employer and shall not be removed from the premises of the employer under any circumstance whatsoever without prior written consent of the employer, or if in the temporary possession of employee, such shall be immediately surrendered to employer.

2. The covenant not to compete stated:

   Upon termination of this agreement, by wrongful discharge or otherwise, employee shall not directly or indirectly, within the existing marketing area of the employee or areas contemplated or begun as expansion during the employee's employment—whether known to employee or not—enter into or engage generally, in any form, in competition with the employer selling terminals, wire, tape, connectors, cable or supplies as listed in the product list in the company's catalogue, either as an individual on his own or as a partner or joint venturer, or as an employee or agent for any person, or as an officer, director or shareholder or otherwise, for a period of three (3) years after the date of termination of his employment hereunder.

Dowling organized and formed DowCo, a company that sold the same or substantially similar products as Hi-Line had. Thereafter, Dowling quit Hi-Line and solicited several of Hi-Line's current and former salesmen and billing personnel to work for DowCo. DowCo successfully competed with Hi-Line in three geographical markets Hi-Line previously had dominated—Miami, Atlanta, and Dallas/Ft. Worth. It did so by encouraging Hi-Line's ex-employees to appropriate and use confidential information, particularly customer account lists, those employees had access to and used while employed by Hi-Line.

Hi-Line instituted this suit, alleging that DowCo's successful efforts to induce some of its current and former employees to work for DowCo and DowCo's theft and use of its trade secrets constituted tortious interference with contractual relations and unfair competition under Texas law. DowCo answered that the covenant not to compete in the employment contracts was unenforceable, and therefore no claim for tortious interference with contractual relations could lie against it. DowCo also asserted that the allegedly confidential material DowCo secured from Hi-Line's former employees, including customer lists and related information, did not constitute valid trade secrets and therefore could not be misappropriated.

In the Rule 52(a) findings of fact, the district court found that DowCo had (1) photocopied and used a number of Hi-Line's business documents, including customer account cards, daily sales reports, credit forms, order forms, pricing codes, and sales handbooks; (2) created a display book that consisted of photographs of DowCo's products in one of Hi-Line's specially developed display cases; (3) printed decals very similar to Hi-Line's; and (4) intentionally persuaded Hi-Line's former employees to breach their employment contracts with Hi-Line. The district court also found that the contents of the documents DowCo had appropriated were neither generally known nor readily ascertainable and were treated by Hi-Line as trade secrets. In its conclu-

sions of law, the district court held that under Texas law[3] the covenant not to compete was unenforceable but its unenforceability was not a defense as a matter of law to a claim for tortious interference with contractual relations. The court agreed with Hi-Line and determined that DowCo's conduct constituted tortious interference with contractual relations and unfair competition.

In its complaint and at trial, Hi-Line had sought the full array of damages for DowCo's tortious conduct—lost profits and compensatory damages for DowCo's misappropriation of its trade secrets and for DowCo's inducing the breaches of the covenant not to compete and the covenant not to disclose trade secrets, expenses incident to hiring new personnel, punitive damages, attorney's fees, etc. The district court, however, awarded Hi-Line only damages to recompense Hi-Line for the expenses incident to finding and training replacement personnel. The district court explicitly denied Hi-Line's request for an award of lost profits, finding that Hi-Line failed to present adequate proof on this issue. Nor did the court award Hi-Line compensatory or punitive damages for DowCo's successful efforts in inducing Hi-Line's ex-employees to breach the covenant not to disclose trade secrets or DowCo's misappropriation of Hi-Line's trade secrets. Instead, the sole relief ordered to remedy this tortious conduct was an injunction of two years duration that prohibited DowCo from either contacting or selling products to any of the customers Hi-Line was servicing in April 1983. This injunction expired by its own terms in April 1985. Hi-Line did not file a cross-appeal challenging (1) the amount of the damages awarded, (2) the denial of any other aspect of damages it had sought, or (3) the scope or duration of the injunction.

## II.

*Tortious Interference with Contractual Relations*

■ Hi-Line alleges that DowCo induced Hi-Line's ex-employees to breach two provi-

---

**3.** None of the parties disputes that Texas law governs this suit.

sions of the employment contracts between Hi-Line and those employees—the covenant not to disclose trade secrets and the covenant not to compete. Under Texas common law, the elements of a cause of action for tortious interference with contractual relations are: (1) a contract; (2) an intentional and willful act interfering with the contract that was calculated to cause damage to the plaintiff; (3) the lack of any legally justifiable cause or excuse on the part of the defendant; and (4) actual damages. *White v. Larson,* 586 S.W.2d 212, 215 (Tex.Civ.App.—El Paso 1979, no writ); *Armendariz v. Mora,* 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r. e.); *see also C.E. Services, Inc. v. Control Data Corp.,* 759 F.2d 1241, 1248 n. 10 (5th Cir.1985).

### 1. *Inducing the Breach of the Covenant Not to Compete*

The district court found that the duration of the covenant not to compete rendered the covenant unreasonable and unenforceable.[4] Relying upon *Clements v. Withers,* 437 S.W.2d 818 (Tex.1969), the district court nevertheless held that the unenforceability of the covenant was not a defense to an action for tortious interference with contractual relations. In *Clements,* the purchaser of real estate induced the seller to breach an oral exclusive listing agreement between the seller and the realtor. Although the listing agreement was unenforceable (as between the parties to the agreement) because it did not comply with the statute of frauds, the Texas Supreme Court held that the unenforceability of that agreement did not provide a non-contracting third party with a defense to an action by the realtor against that party for tortious interference with contractual relations. The Texas Supreme Court explained that the underlying contract was neither void nor illegal but merely voidable and that no public policy existed opposing its performance. As such, a party not in privity with either of the principals could not

rely upon the unenforceability of the contract and escape liability in tort. *Id.* at 821.

After the district court issued its decision in this case, this Court decided a case raising the identical issue raised here. In *NCH Corp. v. Share Corp.,* 757 F.2d 1540 (5th Cir.1985), a former employer sued his ex-employees' subsequent employer for inducing the ex-employees to breach a covenant not to compete contained in the employment contracts between the former employer and the ex-employees. As in this case, the underlying covenant was unenforceable. Citing *Clements v. Withers,* this Court recognized that ordinarily the mere voidability of a contract between the contracting parties is not a defense to an action against a third party for inducing one of the contracting parties to decline performing the contract. Public policy opposes the performance of a contractual provision that is void, however, and a cause of action will not lie against a third party for inducing a breach of a void provision. *See NCH Corp.,* 757 F.2d at 1543; *Clements,* 437 S.W.2d at 821. The *NCH Corp.* court found the covenant not to compete was void and unenforceable under Texas law because of the strong public policy against restraints of trade and the concomitant hardships resulting from interference with a person's means of livelihood. 757 F.2d at 1543. The court accordingly held that the unenforceability of the covenant not to compete in the employment contracts was a valid defense to a tortious interference with contractual relations claim against the subsequent employer. We are bound to follow our *NCH Corp.* holding. *See McClure v. Mexia Independent School District,* 750 F.2d 396, 401 n. 4 (5th Cir. 1985); *Affholder, Inc. v. Southern Rock, Inc.,* 746 F.2d 305, 311 (5th Cir.1984). We hold, therefore, that the unenforceability of the covenant not to compete is a complete defense to the claim of tortious interference with contractual relations insofar as the claim is based upon that covenant.

---

**4.** In an action unrelated to this suit, the Texas Court of Appeals concluded that this same covenant not to compete was unenforceable. *See*

*Hi-Line Electric Co. v. Cryer,* 659 S.W.2d 118, 121 (Tex.Civ.App.—Houston 1983, no writ).

The only damages the district court awarded in this case were attributable to Hi-Line's hiring and training of replacement employees. DowCo could not be held liable for inducing Hi-Line's employees to leave Hi-Line and work for it. The entire award of damages, therefore, must be vacated. Our conclusion, of course, neither sanctions DowCo's unfair trade practices nor exonerates its conduct.

## 2. Inducing the Breach of the Covenant Not to Disclose Trade Secrets

The remaining challenges DowCo raises in this appeal involve the district court's factual findings concerning DowCo's theft and use of Hi-Line's trade secrets, particularly Hi-Line's customer list. DowCo argues that it could not be held liable for inducing the breach of the covenant not to disclose trade secrets because the employment contracts were void.[5] It also asserts that as a matter of law Hi-Line's customer account lists could not be trade secrets.[6]

The only relief the district court awarded for the conduct that DowCo insists was legal and non-tortious, however, was an injunction that prohibited DowCo for a period of two years from contacting or selling products to the customers listed on Hi-Line's April 1983 customer account ledger. The injunction expired by its own terms three months ago. Although Hi-Line had sought damages for this alleged tortious conduct by DowCo, the district court did not award any damages, and Hi-Line has not challenged in this appeal the district court's failure to award damages. In light of these facts, it is apparent to this Court that the expiration of the injunction renders moot any assertions by Hi-Line and answers by DowCo as to the validity of the injunction or any other issues involved in

5. DowCo appears to base this argument on two related, and somewhat novel, legal theories. First, the unenforceability of the covenant not to compete renders the entire employment agreement invalid and, hence, DowCo cannot be held liable for tortiously inducing the breach of the covenant not to disclose trade secrets. Second, the covenant not to disclose trade secrets is akin to a covenant not to compete. Under *Clements*, therefore, the unenforceability of the covenant not to disclose trade secrets is an absolute defense to the action against DowCo for tortiously inducing the breach of that covenant. Without addressing the merits of these arguments, we note that the mere fact that a covenant not to compete is void does not render void the remainder of the employment contract. Where a contracting party agrees to perform several acts that are separable, and one is either unlawful or void as against public policy but the remainder are neither unlawful nor void, the invalid provision may be severed from the valid provisions and the valid provisions enforced. *See Williams v. Williams*, 569 S.W.2d 867, 869 (Tex.1978); *Wilson v. Teacher Retirement System of Texas*, 617 S.W.2d 329, 332 & n. 3 (Tex. Civ.App.—Amarillo 1981, no writ); *McFarland v. Haby*, 589 S.W.2d 521, 524 (Tex.Civ.App.— Austin 1978, writ ref'd n.r.e.); *see also City of Del Rio v. Ulen Contracting Corp.*, 94 F.2d 701, 705 (5th Cir.1938). While it is true that in an action for damages a covenant not to compete must stand or fall as written and may not be modified, *see N.C.H. Corp.*, 757 F.2d at 1544; *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d 950, 953 (Tex.1960), the same is not true of the entire contract. Texas courts repeatedly have severed invalid portions of a contract and enforced the valid ones in an action for damages. *See Redgrave v. Wilkinson*, 208 S.W.2d 150, 152 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.); *Dietz v. Van Nortwick*, 188 S.W.2d 590, 593 (Tex.Civ.App.—Galveston 1945, writ ref'd w.o.m.); *Smith v. Morton Independent School District*, 85 S.W.2d 853, 858 (Tex.Civ.App.— Amarillo 1935, writ dism'd). We also recognize that a covenant not to disclose trade secrets is significantly different from a covenant not to compete. The former is consistent with public policy, whereas the latter is not. *See, e.g., NCH Corp.*, 757 F.2d at 1543. Under *Withers*, therefore, even if we assumed that a covenant not to disclose trade secrets was unenforceable as between the parties, the unenforceability would not be a defense to an action against a third party for tortious interference with contractual relations.

6. In *Zoecon Industries v. American Stockman Tag Co.*, 713 F.2d 1174, 1179 n. 6 (5th Cir.1983), we rejected a similar challenge. In that case, we upheld as not clearly erroneous the district court's factual findings that the information contained in the former employer's customer account lists was neither available generally nor ascertainable readily, and therefore constituted trade secrets of the former employer. *Id.* at 1179 & 1180 n. 9; *see also Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 766 (adopting § 757 of the Restatement of Torts which provides that a "list of customers" may be a trade secret), *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958).

the trade secrets claim. *See, e.g., Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp.*, 746 F.2d 251, 252 (5th Cir.1984) (While the appeal was pending, a one-year covenant not to compete contained in an employment contract expired; therefore any request for an injunction for an alleged breach of the covenant not to compete was rendered moot). The only relief DowCo seeks for the district court's challenged legal and factual determinations on the trade secrets issue is the invalidation of the now-expired injunction. There is no relief we could afford DowCo even if we accepted its claim. And since Hi-Line failed to challenge the district court's denial of an award of damages for DowCo's conduct related to trade secrets issue, any decision we might render in Hi-Line's favor would have no legal effect.

### III.

In summary, we conclude that the district court erroneously held that the unenforceability of the covenant not to compete could not provide DowCo with a defense to a claim for tortious interference with contractual relations. Since the only damages the district court awarded were for conduct that was permissible and since Hi-Line did not appeal the award of damages, the entire damages award must be vacated. DowCo's remaining assertion on appeal is moot because the injunction which it attacks has expired. The case is remanded for the sole purpose of permitting the district court to reassess costs.

REVERSED AND REMANDED.