JULIETTE FOWLER HOMES, INC. et
al., Petitioners,

v.

WELCH ASSOCIATES, INC.
Respondent.

No. C–7805.

Supreme Court of Texas.

June 6, 1990.

Rehearing Overruled Sept. 12, 1990.

Corbet F. Bryant, J. Carlisle DeHay, Kevin J. Cook, Dallas, for petitioners.

John M. Zukowski, Houston, for respondent.

## OPINION

HIGHTOWER, Justice.

This breach of contract and tortious interference with contractual relations case involves issues concerning the enforceability of a covenant not to compete. The trial court rendered judgment in favor of Welch Associates Inc. and against Juliette Fowler Homes, Inc. et al. The court of appeals affirmed the judgment of the trial court.[1] We reverse the judgment of the court of appeals and render judgment that Welch Associates, Inc. take nothing.

Juliette Fowler Homes, Inc. (Fowler) is a charitable nonprofit organization, an affiliate of the Disciples of Christ Church. In 1981, Fowler entered into a fund-raising contract (Fowler–Welch contract) with Welch Associates, Inc. (Welch), whereby Welch agreed to conduct a fund-raising campaign for the benefit of Fowler. Welch contracted with John W. Butler Companies, Inc. (Butler Companies), to help execute the Fowler fund-raising campaign. The contract between Welch and Butler Companies (Butler Companies–Welch contract) con-

tained a covenant not to compete which bound Butler Companies to not "enter into any form of contract for services" with any of Welch's clients for a period of two years after the conclusion of the Butler Companies–Welch contract. Eventually, Fowler became dissatisfied with Welch's fund-raising results, and Welch and Butler Companies became dissatisfied with one another's performance. Pursuant to the express notice provisions, Fowler terminated its contract with Welch. Butler Companies also terminated its contract with Welch. Subsequently, John Butler, the president[2] of Butler Companies, was hired by the National Benevolent Association (NBA), one of whose agencies is Fowler. John Butler was assigned to work directly with Fowler, and supervise Fowler's fund-raising campaign.

Welch filed this action against Fowler, alleging breach of the Fowler–Welch contract, and further alleging tortious interference with the noncompetition clause[3] in the contract between Welch and Butler Companies by inducing John Butler to accept the Director of Development position with NBA. Welch also named John Butler and Butler Companies as defendants, seeking damages for breach of the noncompetition clause of the Butler Companies–Welch contract and for tortious interference with Welch's contractual relations with Fowler.

The jury found that John Butler breached the noncompetition clause of Butler Companies' contract with Welch and that John Butler and Butler Companies tortiously interfered with Welch's contractual relationship with Fowler. Furthermore, the jury found that Fowler tortiously interfered with Welch's contractual relationship with Butler Companies. A judgment for damages was rendered in favor of Welch against Fowler, John Butler and Butler Companies, jointly and severally. In addition, John Butler was enjoined from certain

---

1. The court of appeals' opinion was originally unpublished but has been ordered published by this court.

2. As far as we can determine from the record, John Butler was the only "employee" of Butler Companies.

3. The terms "covenant not to compete" and "noncompetition clause" are used interchangeably in this opinion.

activities for one year from the date of the judgment.[4]

## BREACH OF THE BUTLER COMPANIES–WELCH NONCOMPETITION CLAUSE

The jury found that John Butler breached the noncompetition clause of the Butler Companies–Welch contract by accepting the Director of Development position with NBA. Among other things, judgment for actual damages was rendered for Welch and against John Butler based upon his breach of the noncompetition clause. John Butler argues that the noncompetition clause of the Butler Companies–Welch contract is unenforceable as written and that Welch may not recover monetary damages for breach of an unenforceable noncompetition clause. Welch does not allege that Butler Companies violated the noncompetition clause by contracting with Welch's clients; rather, Welch argues that John Butler and Butler Companies are liable for breach of contract because John Butler violated the noncompetition clause in the Butler Companies–Welch contract by accepting a position with NBA. Since the noncompetition clause is unenforceable as written, we agree that Welch may not recover monetary damages for John Butler's breach of the Butler Companies–Welch contract.

The noncompetition clause in the Butler Companies–Welch contract provides:

The employees of the John W. Butler Companies, Inc., upon acceptance of this contract, agreed that no disclosure of any confidential information will be given to any third party at any time; and further, that during the life of this contract, and for a period of two (2) years after conclusion of this contract, The John W. Butler Companies, Inc., will not enter into any form of contract for services, directly or indirectly, with any client of Welch Associates, Inc., past or present, including Juliette Fowler Homes, Inc., any agencies of the National Benevolent Association, St. Louis, Missouri, without the expressed written consent of Welch Associates, Inc.

A covenant not to compete is in restraint of trade and unenforceable on grounds of public policy unless it is reasonable. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex.1990); *Frankiewicz v. National Comp Assoc.*, 633 S.W.2d 505, 507 (Tex. 1982). A covenant not to compete is not a reasonable restraint of trade unless it meets each of three criteria: (1) the covenant not to compete must be ancillary to an otherwise valid transaction or relationship; (2) the restraint created by the covenant not to compete must not be greater than necessary to protect the promisee's legitimate interest; and (3) the promisee's need for the protection afforded by the covenant not to compete must not be outweighed by either the hardship to the promisor or any injury likely to the public. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d at 682. Whether a covenant not to compete is a reasonable restraint of trade is a question of law for the court. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d at 682; *Hershaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983).

■ In determining the enforceability of the noncompetition clause in the Butler Companies–Welch contract, we need only consider the second criteria: the restraint created by the covenant not to compete

---

4. The judgment inexplicably enjoined John Butler as follows:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a permanent injunction be granted enjoining John W. Butler for a period of one year from the date of this Judgment [April 2, 1987] from contacting any individual or entity, who resides in the United States, the identity of whom or which was first disclosed by WAI [Welch] to John W. Butler during the term of the management contract between Welch Associates, Inc., and the John W. Butler Companies, Inc., for the purpose of soliciting funds.

Since more than one year has passed from the date of judgment, the injunction has expired by its own terms and it is not necessary for this court to address its validity. *See Parr v. Stockwell*, 159 Tex. 440, 322 S.W.2d 615 (1959). Furthermore, in the court of appeals, Welch conceded that "the injunction fashioned by the [Trial] Court is not on point with either the restrictive covenant found in the Butler [Companies–Welch] Contract or the evidence offered at trial."

must not be greater than necessary to protect the promisee's legitimate interest. Under the second criteria, our primary focus is whether the covenant not to compete incorporates reasonable limitations concerning time, geographical area and scope of activity which do not impose a greater restraint than is necessary to protect the promisee's interest. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d at 685. As written, the noncompetition clause in the Butler Companies–Welch contract contains no limitations concerning geographical area or scope of activity. Butler Companies and its employees [5] are prohibited from entering into any form of contract for services or employment in any capacity or position, directly or indirectly, with any past or present clients of Welch wherever they may be located. This prohibition is absolute, unequivocal and unreasonable. Accordingly, we hold that the noncompetition clause in the Butler Companies–Welch contract as written is an unreasonable restraint of trade and unenforceable on grounds of public policy.

■ John Butler argues that since the noncompetition clause of the Butler Companies–Welch contract is unenforceable as written, Welch may not recover monetary damages for breach of an unenforceable noncompetition clause. We agree.

An action for damages may not be predicated upon the breach of an unenforceable noncompetition clause. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 952–953 (1960); *Frankiewicz v. National Comp Assoc.*, 633 S.W.2d at 507–508. For purposes of an action for damages, the enforceability of the covenant not to compete will be determined as written and may not be modified to render it reasonable and enforceable. *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d at 952–953; *Frankiewicz v. National Comp Assoc.*, 633 S.W.2d at 507–508. As this

court discussed in *Weatherford Oil Tool Co. v. Campbell:*

> If the agreement is not reasonably limited as to either time or space, the parties are not definitely apprised of their respective rights and duties until a court of equity has carved out an area or a period that is reasonable under the circumstances. It is one thing for the court to do this as an incident to the granting of injunctive relief which operates prospectively and an entirely different matter to reform the contract for the purpose of giving the employer a cause of action for damages. In the latter situation the defendant would be required to respond in damages for what he had done at a time when there was no way of determining, except possibly by an action for declaratory judgment, where or for how long he was legally obligated to refrain from competing.
>
> \*    \*    \*    \*    \*    \*
>
> We hold that an action for damages resulting from competition occurring before a reasonable territory and period have been prescribed by a court of competent jurisdiction must stand or fall on the contract as written. If the agreement is not enforceable in accordance with its terms because either the time or the area stipulated therein is unreasonable, the employer may obtain injunctive relief but will not be awarded a money recovery for anything the employee may have done prior to a judicial declaration of the rights and obligations arising from the contract.

340 S.W.2d at 952–953. Since the noncompetition clause of the Butler Companies–Welch contract is unenforceable as written, we hold that Welch may not recover monetary damages for John Butler's breach of the noncompetition clause by accepting a position with NBA.[6]

---

**5.** Since it is not necessary to the disposition of this cause, we do not address (1) whether Welch could enforce the noncompetition clause in the Butler Companies–Welch contract against John Butler simply because he is an employee of Butler Companies or (2) whether John Butler is

individually liable for the breach of the Butler Companies–Welch contract.

**6.** While this cause was pending before this court, the Legislature added sections 15.50 and 15.51 to the Texas Business and Commerce Code concerning covenants not to compete.

## TORTIOUS INTERFERENCE WITH THE BUTLER COMPANIES–WELCH CONTRACT

Welch obtained favorable jury findings regarding its claim that Fowler tortiously interfered with Welch's contractual relationship with Butler Companies. Fowler argues that a judgment cannot be based upon tortious interference with the Butler Companies–Welch contract because the contractual provision that was violated—the noncompetition clause—is unenforceable. Fowler argues that the noncompetition clause in the Butler Companies–Welch contract as written is an unreasonable restraint of trade and unenforceable on grounds of public policy. Therefore, Fowler's actions "inducing" John Butler to accept the Director of Development position with NBA cannot support a judgment for tortious interference. This argument presents the narrow issue of whether the unenforceability of the noncompetition clause in the Butler Companies–Welch contract is a defense to Welch's action against Fowler for tortious interference with contractual relations. Under the facts of this case, we hold that the unenforceability of the noncompetition clause is a defense to Welch's tortious interference claim against Fowler.

In Texas, the elements of a cause of action for tortious interference with contractual relations are (1) there was a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred. *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *see also Hi–Line Elec. Co. v. Dowco Elec. Prod.*, 765 F.2d 1359, 1362 (5th Cir.1985).[7]

■ The first element requires the existence of a valid contract. *Steinmetz & Assoc., Inc. v. Crow*, 700 S.W.2d 276, 277 n. 1 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). However, even an unenforceable contract may serve as the basis for a tortious interference claim if the contract is not void. *Clements v. Withers*, 437 S.W.2d 818, 821 (Tex.1969). In other words, mere unenforceability of a contract is not a defense to an action for tortious interference with its performance. *Id.*

■ *Clements* concerned an action for tortious interference with a real estate listing agreement that was unenforceable between the contracting parties under the statute of frauds. *Id.* at 820. In *Clements*, we expressly noted that the contract

TEX.BUS. & COM.CODE ANN. §§ 15.50, 15.51 (Vernon Supp.1990). The Legislature made these sections applicable "to a covenant entered into before, on, or after the effective date of this Act." Act of June 16, 1989, ch. 1193, § 1, 1989 Tex.Gen.Laws 4852 (effective Aug. 28, 1989). *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d at 684. We need not determine in this case whether sections 15.50 and 15.51 apply retroactively to affect litigation concerning the rights of parties to a covenant not to compete which commenced before the statute was enacted. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d at 685; *Martin v. Credit Protection Ass'n*, 793 S.W.2d 667 (Tex.1990). Under section 15.50(2), "a covenant not to compete is enforceable to the extent that it ... contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX.BUS. & COM.CODE ANN. § 15.50(2) (Vernon Supp.1990). Under section 15.51(c), if the covenant not to compete "does not meet the criteria *specified* by Subdivision (2) of Section 15.50, the court, at the request of this promisee, shall reform the covenant to the extent neces-

sary to cause the covenant to meet the criteria specified by Subdivision (2) of Section 15.50 and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief." TEX. BUS. & COM.CODE ANN. § 15.51(c) (Vernon Supp.1990). Thus, sections 15.50(2) and 15.-51(c) would not require a result in this case different from the one we reach today. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d at 685; *Martin v. Credit Protection Ass'n*, 793 S.W.2d at 669.

7. At one time the lack of justification or excuse was viewed as an element of the plaintiff's right of recovery. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984). Recently, however, this court overruled *Sakowitz* and its progeny holding that "the privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has the burden of proof." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

was not void or illegal, neither was there any public policy opposing its performance. *Id.* at 821. We now hold that covenants not to compete which are unreasonable restraints of trade and unenforceable on grounds of public policy cannot form the basis of an action for tortious interference. *See NCH Corp. v. Share Corp.*, 757 F.2d 1540, 1543–1544 (5th Cir.1985); *Hi–Line Elec. Co. v. Dowco Elec. Prod.*, 765 F.2d at 1362.

■ As we have noted above, the non-competition clause in the Butler Companies–Welch contract as written is an unreasonable restraint of trade and unenforceable on grounds of public policy. We hold, therefore, that the unenforceability of the noncompetition clause in the Butler Companies–Welch contract is a valid defense to Welch's tortious interference claim against Fowler.

## BREACH OF THE FOWLER–WELCH CONTRACT

■ Fowler argues that the court of appeals erred in affirming the trial court's judgment "if based upon a claim of breach of contract," since the fund-raising contract was properly terminated. We address this point because the trial court's judgment against Fowler did not specify whether it was based upon Welch's tortious interference or breach of contract claim against Fowler.

The fund-raising contract involved in this case was a negotiated, arm's length agreement between Fowler and Welch. Paragraph 14, the termination provision, specified how the termination notice should be given and how payment should be calculated in the event of termination.[8] Welch does not contest that written notice of termination was properly given, rather it claims that termination was wrongful because there was no good faith reason for termination.

At trial, the jury specifically found that Fowler and Welch mutually intended and agreed that the fund-raising contract could be terminated for any reason. When a contract provides expressly that it is subject to termination upon notice, the general rule is that each party to the contract has the legal right to cancel the contract. *Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561, 576 (Tex.Civ.App.—Austin 1958, writ ref'd n.r.e.). In this case, the parties bargained for the flexibility of terminating the contract upon tender of the requisite notice. Neither party should be denied the benefit of its bargain. We hold that Fowler properly terminated the fund-raising contract pursuant to its express terms; therefore, Welch's breach of contract claim against Fowler must fail.

## TORTIOUS INTERFERENCE WITH THE FOWLER–WELCH CONTRACT

■ At trial, the jury found that John Butler and Butler Companies tortiously interfered with the contractual relationship between Fowler and Welch. John Butler and Butler Companies argue that since Fowler properly terminated the fund-raising contract with Welch pursuant to the contract's express notice provisions, judgment could not be rendered against John Butler or Butler Companies for tortious interference with the Fowler–Welch contract. Welch argues that Texas law protects against tortious interference with valid existing contracts and prospective business relationships, and that an existing contract which is terminable upon notice should be given similar protection.

Texas law protects existing and prospective contracts from interference. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689

---

**8.** Paragraph 14, the termination provision, states:

> This agreement may be cancelled by either party with the cancellation to be effective sixty days after the mailing or personal delivery of a written notice of cancellation; in the event of a cancellation, the professional fee will be prorated to the date of cancellation according to the fee payment schedule on the effective date of cancellation, based upon the rate of payment to WAI in effect for the particular month in which the termination is effective, and the remaining unpaid fees established by the schedule herein will not be due or owing by Juliette Fowler Homes, Inc., to Welch Associates, Inc.

(Tex.1989); *C F & I Steel Corp. v. Pete Sublett & Co.*, 623 S.W.2d 709, 715 (Tex. Civ.App.—Houston [1st Dist.], 1981, writ ref'd n.r.e.); *Harshberger v. Reliable–Aire, Inc.*, 619 S.W.2d 478, 481 (Tex.Civ.App.—Corpus Christi 1981, writ dism'd w.o.j.). In *Sterner v. Marathon Oil Co.*, 767 S.W.2d at 689, this court held that the terminable-at-will status of a contract was no defense to an action for tortious interference with its performance. Until a contract is terminated, it is valid and subsisting, and third persons are not free to tortiously interfere with it. *Id.; see* RESTATEMENT (SECOND) OF TORTS § 766 comment g (1979). It would be inconsistent to leave contracts that are terminable upon notice unprotected from tortious interference while protecting relations that are more or less "complete" or "definitive" (i.e., contracts with fixed terms, terminable-at-will contracts and prospective business relations). *See Champion v. Wright*, 740 S.W.2d 848, 854 (Tex.App.—San Antonio 1987, writ denied); *Deauville Corp. v. Federated Dept. Stores, Inc.*, 756 F.2d 1183, 1195 (5th Cir. 1985). We hold that the terminable upon notice status of the Fowler–Welch contract is not a defense to an action for tortious interference with its performance.

■ John Butler and Butler Companies argue that there is no evidence that they tortiously interfered with the Fowler–Welch contract. After a thorough review of the record, we agree.

In reviewing a no evidence point, we consider only the evidence and inferences tending to support the jury verdict and disregard all evidence to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If there is any evidence of probative value to support the jury's finding that John Butler and Butler Companies tortiously interfered with the Fowler–Welch contract, we must overrule the no evidence point.[9] *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–662 (1951).

In 1983, Fowler became increasingly dissatisfied with the direction and results of Welch's fund-raising efforts. John Butler was also dissatisfied with Welch and the operation of the fund-raising campaign. In mid–1983, Ed Dowell, Fowler's Executive Director, allegedly stated that it would be good for Fowler if the current NBA Director of Development was no longer there and John Butler could be moved into that position. Mr. Dowell allegedly expressed his desire that John Butler assume total responsibility for the development of Fowler including the fund-raising campaign. Mr. Dowell and John Butler had worked together on the fund-raising campaign almost since its inception.

In September 1983, the NBA Director of Development was terminated. Subsequently, Fowler appointed a Search Committee to find a successor. In December 1983, Mr. Dowell contacted John Butler concerning the Director of Development position; however, John Butler was not particularly interested. In January 1984, the members of the Search Committee decided that they wanted John Butler to be the Director of Development. Mr. Warren Moray, the Chairman of the Fowler Board, indicated that he would contact John Butler to see if he was interested in the position. Although he was not initially interested, John Butler decided to discuss the position. In February 1984, John Butler informed Welch that he was interested in the Director of Development position and had decided to pursue this employment opportunity. In April 1984, Fowler hired John Butler and terminated the Fowler–Welch contract. The decision to hire John Butler as Director of Development was not dependent upon the termination of the Fowler–Welch contract and the termination of the Fowler–Welch contract was not dependent upon John Butler's hiring.

Even if John Butler had induced Fowler to terminate the Fowler–Welch contract,

---

**9.** No evidence points of error must and may only be sustained when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; and (4) the evidence established conclusively the opposite of the vital fact. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362–363 (1960).

merely inducing one of the parties to exercise his right to terminate contractual relations after giving the required notice does not *necessarily* constitute tortious interference with contract under Texas law. *C.E. Services, Inc. v. Control Data Corp.,* 759 F.2d 1241, 1248 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985); *Kingsbery v. Phillips Petroleum Co.,* 315 S.W.2d at 576. Furthermore, even if Fowler's termination of the Fowler–Welch contract was an "outgrowth" of John Butler's hiring, this would not constitute any evidence that *John Butler* or *Butler Companies* either induced Fowler to terminate the contract or tortiously interfered with the contract.

Since we have determined that there is no evidence that John Butler or Butler Companies tortiously interfered with the Fowler–Welch contract, Welch is not entitled to an award of actual damages. Recovery of actual damages is a prerequisite to the receipt of exemplary damages. *Doubleday & Co., Inc. v. Rogers,* 674 S.W.2d 751, 753–754 (Tex.1984). Consequently, Welch is not entitled to recover exemplary damages.

### CONCLUSION

We conclude, therefore, that the noncompetition agreement in the Butler Companies–Welch contract as written is an unreasonable restraint of trade and unenforceable on grounds of public policy. Furthermore, since the noncompetition clause of the Butler Companies–Welch contract is unenforceable as written, Welch may not recover monetary damages for John Butler's breach of the noncompetition clause by accepting a position with NBA. Since the noncompetition clause of the Butler Companies–Welch contract as written is an unreasonable restraint of trade and unenforceable on grounds of public policy, it cannot serve as the basis for a tortious interference claim against Fowler.

Since Fowler terminated its contract with Welch pursuant to the express notice provisions of the contract, Fowler cannot be held liable for breach of the Fowler–Welch contract. Moreover, we hold that there is

no evidence that John Butler or Butler Companies tortiously interfered with the Fowler–Welch contract. Since Welch is not entitled to an award of actual damages, it is not entitled to recover exemplary damages. We hereby reverse the judgment of the court of appeals and render judgment that Welch take nothing.