**Thomas J. WEAVER d/b/a Wellwritten Enterprises, Appellant,**

v.

**HIGHLANDS INSURANCE COMPANY, Appellee.**

No. 01–98–00712–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 9, 1999.

Craig Smith, Austin, for Appellant.

Collyn A. Peddie, Houston, for Appellee.

Panel consists of Justices
SCHNEIDER, O'CONNOR, and TAFT.

## OPINION

TIM TAFT, Justice.

This is an appeal from summary judgment against Thomas J. Weaver, d/b/a Wellwritten Enterprises (Weaver), in favor of Highlands Insurance Company (Highlands). We address whether Highlands negated as a matter of law Weaver's claim that Highlands was obligated to pay Weaver because Highlands prevented Weaver from performing. We affirm.

## Background

Weaver sued Highlands for breach of contract. Weaver and Highlands signed a written consultant agreement which, among its terms, stated the following:

1) The terms of the Agreement shall commence as of November 5, 1996 and shall continue thereafter until terminated by either party giving thirty (30) days written notice of termination to the other party.

2) [Weaver's] fee for performance of the services rendered [by him] shall be $53.00 per hour for the specified services agreed upon by both parties and detailed in Schedule A.[1] [Weaver] shall be paid promptly upon receipt of invoice from [him]. Invoices shall be submitted on a monthly basis.

3) It is agreed and understood that all services performed by [Weaver] hereunder will be performed as an independent contractor and not as an employee of Highlands Insurance Company. Consequently, [Weaver] shall not be entitled to participate in any employee benefits programs provided by Highlands Insurance Company to its employees. Additionally, liabilities and/or damages regulated under the Worker's Compensation legislation shall be the responsibility of [Weaver], and not Highlands Insurance Company.

4) Weaver shall be solely responsible for filing and paying federal income and social security taxes as required by law.

Weaver began working on November 5. Donna Fair worked with Weaver on the team assigned the MSDV project. Fair, and other people working on the team, gave Weaver work to do. Fair was not satisfied with Weaver's work because she felt it was not proceeding on schedule, he was unable to work without constant supervision, he lacked the problem-solving

---

1. Schedule A states that Weaver would work on a computer project known as the MSDV system, and other projects as assigned.

abilities necessary for the job, and he spent excessive, nonproductive time on the telephone. Weaver said in his deposition that Fair complained to him by saying the person doing the job before him would have had things done more quickly.

On November 11, Fair complained to Bill Schuler, the assistant vice-president of Highlands. Schuler spoke about the situation to his superior, Bob Resch. Resch told Schuler to let Weaver go because things were not working out. Schuler immediately informed Weaver that Highlands no longer required his services, took Weaver's security badge from him, and escorted him off the premises.

On November 12, Weaver sent a letter and an invoice to Highlands, addressed to Resch, in which he said:

The early termination of this contract is unsatisfactory to all parties. The biased statements made by the part-time analyst from Dallas were a professional insult. That she was upset that work was not proceeding according to her unrealistic schedule, that she was not made project manager, that she was not consulted prior to the contract being signed with Wellwritten Enterprises, and that she wanted a person from her consulting firm hired for the technical position are not acceptable excuses for her behavior. You are personally aware of some of the problems encountered in getting my computer set up and obtaining the necessary security access. Even on the day I departed, I had to spend a great deal of time trying to get a TEBS account working because Catherine Carroll, the supervisor listed in Schedule A of my contract, requested that I enter my time using this system. It is not possible for someone to enter such a complex project and immediately be as fast as someone who worked on the project many months and knew the locations of all the files. The fact that all the September parallel reports were dated the end of October was very confusing and a surprise even to those who worked on the project since the beginning. As I was leaving, Mr. Schuler became irritated for no discernible reason. His actions as I departed were an affront to my personal integrity. As a result of this mishandled incident, I do not foresee any possible future working relationship between Highlands Insurance and Wellwritten Enterprises.

The invoice Weaver sent was a bill for $2,318.75, covering the time Weaver actually worked, plus $8,480.00 for the time Weaver expected to work during the 30–day notice period.

On November 20, Highlands sent Weaver a letter explaining that he was entitled to be paid only for services rendered, and that the contract did not guarantee Weaver would work any specified hours. Highlands refused to pay Weaver for time he did not work. Highlands sent Weaver a check for $2,318.75 for the work Weaver actually completed, but Weaver refused the check and returned it to Highlands on December 11.

On December 31, Weaver sent another invoice for $16,773.90, based on Weaver's position that the 30–day written termination notice required by the contract had not yet been given by any party until December 30.

In January 1997, Weaver filed suit for breach of contract, claiming that Highlands breached the consultant agreement by preventing Weaver from performing the project he was assigned by dismissing him without 30–days notice. Weaver also claimed he was entitled to payment for work he expected to do until the agreement was finally terminated, and he included the 30–day notice period as part of the time he expected to work.

In September 1997, Weaver accepted a check from Highlands for $2,318.75, the

amount due for the services actually rendered. The only remaining dispute concerns whether Weaver was entitled to be paid for the time he expected to work during the 30–day notice of termination period.

■ Highlands filed a motion for summary judgment on all of Weaver's claims under Texas Rules of Civil Procedure 166a(c) and (i).[2] Highlands argued the contract was unambiguous, and under its terms, Highlands was not obligated to pay Weaver for time he did not work. Alternatively, Highlands sought a partial summary judgment determination from the trial court—if the trial court found Highlands was obligated to pay Weaver for the 30–day notice period, then the trial court should conclude that Weaver's November 12 letter was written notice of his intention to terminate the agreement.

Weaver's reply stated that because his cause of action was for Highlands' having prevented Weaver's performance, he was entitled to be paid as if he had performed. Weaver claimed the measure of damages was the contract price, less the cost to complete the work. Weaver specified this was payment at the hourly rate for the number of hours Weaver would reasonably have expected to work until the agreement was finally terminated, less the cost of anticipated performance, namely, apartment rent.

Weaver argued to the trial court, and argues to this Court, that he raised genuine issues of material fact concerning (1) whether Highlands breached the contract by preventing him from performing; (2) whether Weaver was in compliance with the agreement before and until November 11; (3) if Highlands was in breach, the amount of damages it owed Weaver; and (4) whether Weaver terminated the agreement by his letters to Highlands. Weaver claims the contract was finally terminated on January 30, 1997, which is 30 days after Highlands gave him written notice of termination, and that he was entitled to expectation damages for the amount of time he expected to work until the contract was terminated.

## Summary Judgment

In Weaver's sole issue presented, he claims the trial court erred in granting summary judgment because the summary judgment evidence raised genuine issues of material fact and did not show that Highlands was entitled to judgment as a matter of law.

### A. Standard of Review

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Johnson,* 891 S.W.2d at 644; *Marchal,* 859 S.W.2d at 412. Thus, Highlands was entitled to summary judgment if it disproved as a matter of law any element of Weaver's cause of action. Here, Highlands sought to prove it was not in breach of the contract because it was obligated to pay him only for services rendered.

Once the movant has established a right to a summary judgment, the burden shifts

---

**2.** Highlands' motion for summary judgment is insufficient as a Rule 166a(i) no-evidence motion because it is conclusory—it does not specifically allege that Weaver lacks evidence, nor does it challenge a particular element of Weaver's claim. *See* Tex.R. Civ. P. 166a(i). Therefore, we do not review Highlands' motion for summary judgment under the no evidence standard of Rule 166a(i).

to the nonmovant. *Marchal,* 859 S.W.2d at 412. The nonmovant must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Marchal,* 859 S.W.2d at 412.

In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Johnson,* 891 S.W.2d at 644; *Marchal,* 859 S.W.2d at 412. We will assume all the evidence favorable to the nonmovant is true. *Johnson,* 891 S.W.2d at 644; *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 619 (Tex.App.— Houston [1st Dist.] 1993, writ denied).

On appeal, we cannot consider any ground for reversal that was not expressly presented to the trial court by written motion, answer, or other response to the motion for summary judgment. *Clear Creek Basin Auth.,* 589 S.W.2d at 677; *Hussong v. Schwan's Sales Enter., Inc.,* 896 S.W.2d 320, 323 (Tex.App.—Houston [1st Dist.] 1995, no writ). We will affirm the summary judgment if any of the theories advanced in the motion for summary judgment is meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Cigna Ins. Co. v. Rubalcada,* 960 S.W.2d 408, 411 (Tex.App.—Houston [1st Dist.] 1998, no writ).

**B. Analysis**

▮ Highlands' motion advanced two theories, one for final summary judgment, and another seeking partial summary judgment. The trial court granted the final summary judgment, accepting Highlands' argument that the contract was not ambiguous, and, under its terms, Highlands was not obligated to pay Weaver for time he did not work. We examine whether this theory is sufficient to support the summary judgment.

Highland argues that interpreting the contract is purely a question of law. Highlands relies on paragraph two of the contract as the term controlling payment to Weaver. Paragraph two states Weaver would be paid only for services rendered "as assigned" by Highlands and "agreed upon by both parties." As summary judgment evidence, Highlands submitted a copy of the written agreement, a copy of an internal memo from Highlands regarding Weaver's termination, the correspondence between Weaver, his attorney, and Highlands, a copy of the check tendered to Weaver, and Weaver's deposition testimony.

▮ Whether a contract is ambiguous is a question of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *GTE Mobilnet of South Texas Ltd. v. Telecell Cellular Inc.,* 955 S.W.2d 286, 289 (Tex.App.— Houston [1st Dist.] 1997, writ denied). In determining ambiguity, we must ascertain and give effect to the objective intent of the parties as expressed in the instrument. *GTE Mobilnet,* 955 S.W.2d at 289. That the parties dispute the meaning of a contract does not render it ambiguous. *Pierce v. Benefit Trust Life Ins. Co.,* 784 S.W.2d 516, 518 (Tex.App.—Amarillo 1990, writ denied). If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and the court will construe the contract as a matter of law. *GTE Mobilnet,* 955 S.W.2d at 289. When the contract is ambiguous, summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker,* 650 S.W.2d at 394.

We hold the terms of the contract are not ambiguous. We agree with Highlands that its meaning is plain: Weaver was only entitled to payment for services rendered; the 30–day written notice provision does not guarantee him work for the notice period, or payment for work he expected

to do during the 30–day notice period. The terms of the agreement are easily understood from the plain meaning of the words. That Weaver disputes the contract's meaning does not render it ambiguous. *See Pierce,* 784 S.W.2d at 518.

■ Moreover, Weaver does not even argue that the contract is ambiguous. Instead, he presented the trial court, and this Court, with his interpretation of the contract.[3] Weaver reads paragraphs one and two of the contract in combination for his interpretation, and claims he was entitled to payment even though he did not work. He does not point to any language in the contract that suggests he was entitled to payment during the 30–day notice period, or that he was guaranteed to work for a certain number of hours. Weaver's subjective intent does not control the interpretation of the contract; what controls is the objective intent as expressed in the writing. *See GTE Mobilnet,* 955 S.W.2d at 289.

Because the agreement entitled Weaver to payment only for work actually rendered, Highlands negated Weaver's claim that Highlands owed Weaver for work he had anticipated doing, but could not because Highlands dismissed him without giving him 30–days notice. Therefore, the trial court did not err in granting Highlands' motion for summary judgment.

Accordingly, we overrule Weaver's sole issue presented.

## Conclusion

We affirm the judgment of the trial court.

Justice O'CONNOR dissenting.

MICHOL O'CONNOR, Justice, dissenting.

I dissent from the majority opinion because I disagree with the analysis. This case is not about whether Weaver was entitled to payment for services not rendered; instead, it is about whether Highlands met its summary judgment burden to negate an element of Weaver's claim. I would hold that Highlands did not meet its burden, reverse the trial court's judgment, and remand to the trial court for further proceedings.

## Analysis

The majority opinion ignores the true issue on appeal—whether Highlands established it was entitled to summary judgment as a matter of law by negating at least one element of Weaver's breach of contract claim.

The elements of a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach. *Hussong v. Schwan's Sales Enter., Inc.,* 896 S.W.2d 320 326 (Tex.App.—Houston [1st Dist.] 1995, no writ). Highlands is not entitled to summary judgment because its motion did not attack any element of a claim for breach of contract. Highlands' motion did not challenge whether there was a valid contract with Weaver; it did not challenge whether Weaver performed under the contract; and it did not challenge whether Weaver was damaged.

Instead, Highlands motion purported to challenge whether it was in breach of the

---

**3.** Weaver's interpretation of the contract is unreasonable—he argues the contract permitted him to continue working until the contract was finally terminated. He does not point to any provision of the contract to support his claim; instead, he claims this is what paragraphs one, two, and Schedule A provide. Under Weaver's interpretation, Highlands has a duty to keep contractors, such as himself, employed full time and must pay them for any days on which they are not assigned any tasks during the duration of the contract. However, Highlands argues that under this consultant agreement, it is contemplated by the parties that there will be unpaid periods of inactivity during the term of the agreement.

contract. It argued it did not breach the contract because it was not obligated to pay Weaver for services he did not render. Highlands' argument cannot support summary judgment because Weaver did not allege the breach was the failure to pay him for work he did not do. Instead, Weaver's pleadings alleged the contract was breached because he was prevented from performing and was terminated without notice. Thus, Highlands' motion for summary judgment does not attack any element of Weaver's claim.

Weaver's response to summary judgment raised fact issues on each of the four elements of a breach of contract claim. He presented evidence that Highlands breached the contract by preventing him from completing the project they had agreed he would complete; the project was not completed; he was fired without 30–days written notice as required by the contract; and he was damaged by the breach.

Nonetheless, Highlands argued that the terms of payment were purely a matter of contract interpretation, and that the contract was not ambiguous. While I agree that the contract is not ambiguous, that does not resolve this case. Weaver was to be paid only for services rendered, as assigned by Highlands, and agreed upon by both parties. The contract also unambiguously required 30–days written notice before the contract could be terminated. When, as here, the parties bargain for the flexibility of terminating a contract upon tendering specific notice, neither party should be denied the benefit of its bargain. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 665 (Tex.1990); *Threadgill v. Farmers Ins. Exchange*, 912 S.W.2d 264, 267 (Tex.App.—Dallas 1995, no writ). When an employment contract requires a certain period of notice, the employment may be canceled on shorter notice or upon none at all *if the employee is paid wages or salary for the specified notice period.* *Hussong*, 896 S.W.2d at 326 (emphasis added); *see also Stolz v. Wells*, 43 S.W.2d 163, 164–65 (Tex.App.—Beaumont 1931, no writ) (stating plaintiff was entitled to one month's salary when defendant breached contract by not giving 30–days written notice as required by contract).

The parties agreed that Weaver would work on the MSDV project. Before that project was completed, Weaver was fired without 30–days written notice. Highlands' termination of the contract without 30–days written notice constituted a breach of the contract. *See Juliette*, 793 S.W.2d at 665; *Threadgill*, 912 S.W.2d at 267. It is undisputed that Weaver was denied the benefit of receiving 30–days written notice. This was the breach that Weaver alleged. Thus, I would conclude that Highlands did not meet its summary judgment burden to negate any element of Weaver's breach of contract claim.