**PETROCON ENGINEERING, INC., Plaintiff**

v.

**MAC EQUIPMENT, INC. D/B/A Mac Flotronics, Defendant**

**No. 1:00–CV–203.**

United States District Court, E.D. Texas, Beaumont Division.

March 5, 2002.

---

30.  *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

Walter D. Snider, John Stephen Morgan, Beaumont, TX, for plaintiff.

Barbara J. Barron, Mehaffy & Weber, Beaumont, TX, Michael S. Hays, Hays McConn Rice & Pickering, Houston, TX,

Mick Lerner, Overland Park, KS, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is defendant's Motion for Summary Judgment. The court having reviewed the motions and responses on file, is of the opinion that summary judgment for the defendant should be GRANTED.

### I. Introduction

This is a contractor case. The plaintiff, Petrocon Engineering (Petrocon), is a contractor and was working on a project for Mobil Chemical Company (Mobil). Petrocon subcontracted the construction of a vessel which was to be used in the completion of the project to the defendant, MAC Equipment (MAC). MAC constructed the vessel, which was installed at the Mobil facility. However, Mobil decided to improve the quality of the welds, which cost Mobil $225,000. Upon completion of the entire project, Mobil did not pay Petrocon a bonus in the amount of $168,000. Petrocon now brings this suit against MAC for the amount of $168,000.

### II. Facts

Petrocon is a Texas corporation with a principle place of business in Jefferson County, Texas. MAC is a Kansas corporation, doing business in Texas. Therefore, this court has jurisdiction and venue.

Beginning in December, 1997, through a usual exchange of documents in a contractor-subcontractor setting, MAC entered into a written contract with Petrocon to manufacture and supply a Product Purge Vessel Extension with Bag House (vessel) for use at the Mobil plant in Beaumont, Texas. On December 30, 1997, Petrocon submitted a request for quotation. That request incorporated Mobil Guide EGE 12–B–1, which included requirements regarding welding and testing of welds. On January 18, 1998, Petrocon received a response from MAC which contained the following provisions entitled "Clarifications and Exceptions":

- We will weld a head on the bottom of the vessel and then perform a hydrostatic test in lieu of 100% radiography. The head will be removed once all testing is complete.

- Our proposal is based on 70% joint efficiency in lieu of 100% joint efficiency.

.    .    .    .    .

- Per ASME, radiography is not required for joint efficiency of .70. No radiography will be performed.

- MAC Equipment will provide a certificate of hydrostatic test. We take exception to providing hydrostatic test charts.

Defendant's Exhibit C. On January 26, 1998, Petrocon was sent a letter submitting a commercial summary with references to dates for "approval drawings" and "certified drawings". Defendant's Exhibit D. On March 26, 1998, Petrocon responded by letter to the "Clarifications and Exceptions" from above, and did not object to the exceptions aside from noting "Minimum spot radiography is required." Defendant's Exhibit E. On March 31, 1998, MAC responded to this most recent letter with a letter containing detailed welding procedure specifications. On April 2, 1998, Petrocon responded, again regarding welding specifications.

On April 23, 1998, Petrocon sent a Purchase Order to MAC for the manufacture of the vessel. The following relevant provision were contained in the order:

- The vendor must adhere to the requirements of Mobil Guide EGE 12–B–1.

.    .    .    .    .

- As a minimum, the Vendor shall perform spot radiography.

●All of Vendor's or Subvendor's welding procedures must be in compliance with Mobil EGE 00–B–21.

●Certificate of Hydrostatic test in lieu of test chart is acceptable.

.　.　.　.　.

●Vendor shall revise the design documents as may be required per Purchaser's comments and then present the revised documents to the Purchaser for initialing prior to issuing for construction.

●Any subsequent revisions to the approved drawings, specifications, or other documents shall be presented to the Purchaser for approval and initialing prior to reissue.

Defendant's Exhibit J (emphasis omitted). On April 27, 1998, MAC responded with additional welding specification comments. Petrocon responded with an April 29, 1998, letter stating its approval of MAC's written welding procedure specification.

On May 21, 1998, MAC submitted an engineering drawing to Petrocon for approval. Contained on that drawing were the following specifications. "Radiography required [—] None, Joint efficiency (shell/head) [—] .70, Shop hydro test pressure [—] 60 psig." Defense Exhibit K. This drawing was signed by David Crim, Petrocon's representative, and marked for resubmission. On June 29, 1998, a final engineering drawing was signed by David Crim, and marked "Approved with Changes". Defense Exhibit L.

MAC proceeded to fabricate the vessel. The hydrostatic test was performed on August 28, 1998, and 60 psig of pressure were applied for one hour. Petrocon's authorized inspector, Ken Rutherford, visited MAC's facilities in Houston three times during the fabrication of the vessel, and was present when the vessel passed the hydrostatic test on August 28, 1998. Defense Exhibit O. The vessel was shipped to Petrocon on September 2, 1998.

### III. Summary Judgment Standard

A court should grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 478, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

### IV. Breach of Contract Claim

This case involves a dispute between a contractor and subcontractor, however, it arose because the client, Mobil, did not pay the contractor a bonus. Most first year law students who have had contracts would consider these facts sufficient and resolve the case by citing *Hadley v. Baxendale*, 9 Exch. 341, 354 (1854). Although such a course is one of many suggested in MAC's motion for summary judgment, and rightly so, this case is resolved before the issue of damages is ever reached. There was a contract for a vessel. This contract provided how and to what quality this vessel

was to be manufactured. Petrocon's suit is based upon breach of contract. Therefore, this case becomes a simple evaluation of whether the vessel met the specifications set out in the contract. If the vessel met the specifications of the contract, then MAC's motion for summary judgment should be granted.

The core dispute is whether or not the welds performed by MAC met the standard set in the contract. Petrocon claims the contract required an 85% joint efficiency, and MAC maintains it only required a 70% joint efficiency. Petrocon also maintains there is a difference between the quality of the weld and how the weld is tested, however, as MAC argues, it is impossible to determine quality without a standard to test against. If the contract required 70% joint efficiency, and the vessel met that standard, MAC's motion should be granted because it performed the contract. Hence, this matter becomes one of contract interpretation.

■ When interpreting a contract, a court must give effect to the intentions of the parties as expressed in the contract. *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 520 (Tex.1984). First, the court must decide whether the contract is ambiguous; the decision about whether a contract is ambiguous is a question of law. *Sage Street Assoc. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993). If a written instrument is worded so that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1980). A provision or term in a contract will be held ambiguous only when, after applying rules of construction, the court concludes that the contract is capable of two different but reasonable meanings. *Id.; Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 147 (Tex.App.-Houston [1st Dist.] 1986, no

writ). If the court concludes that a contract is ambiguous, rendition of summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

■ Extrinsic evidence is only admissible to interpret a contract after the court decides that the contract is ambiguous. *Harris v. Rowe*, 593 S.W.2d 303, 307 (Tex. 1979). However, evidence of the circumstances surrounding the execution of a contract is always admissible. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731–32 (Tex.1981).

After examining the language of the documents and the circumstances surrounding their exchange, the court finds that the agreement is not ambiguous. In construing this agreement, the court's primary concern is to ascertain the true intentions of the parties as expressed in the instruments. *GTE Mobilnet of South Texas Ltd. v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 289 (Tex.App.-Houston [1st Dist.] 1997, writ denied).

■ The parties disagree over the welding efficiency standard required by the contract, and in so arguing, both sides believe the contract's plain meaning leads to opposite results. However, the fact that the parties proffer divergent meanings for the language of the agreements does not render them ambiguous. *Pierce v. Benefit Trust Life Ins. Co.*, 784 S.W.2d 516, 518 (Tex.App.-Amarillo 1990, writ denied). Petrocon argues that through the request for a bid, negotiations and Purchase Order agreement, it established an 85% joint efficiency weld was required. In the alternative, MAC contends that it never offered to supply a vessel with a joint efficiency of 85%, specifically stated that its bid was for a 70% standard, and that the final engineering drawing, signed by a Petrocon

representative, required 70% joint efficiency.

From the time Petrocon requested a bid until the final engineering drawing was signed by Petrocon's representative, the terms of the contract were negotiated. Specifically, the parties disputed whether a 70% or 85% joint efficiency standard would be required. The existence of letters between the parties regarding this matter only serves to strengthen the claim that Petrocon agreed to a 70% joint efficiency standard when David Crim signed the final drawing in June. Additionally, the original drawing submitted on May 21, 1998, had items that were erased and changed by David Crim before he marked the box which said "Re-submit drawings for approval". One of the these marked items was in a key, where the joint efficiency required was changed to a .70 standard. The second and final drawing, signed June 29, 1998, clearly showed that a joint efficiency of .70 was to be used. This final drawing was marked as "Approved with changes" and signed by David Crim. Even the last written agreement, the Purchase Order of April 23, 1998, stated under the section entitled "Approval of Design", that "[t]he Vendor shall submit items 'For Approval' as listed in the attached Vendor Data Schedule .... The Vendor shall revise the design documents as may be required per Purchaser's comments and then present the revised documents to the Purchaser for initialing prior to issuing for construction." The last drawing was signed by Petrocon's representative and required a 70% joint efficiency standard, therefore, the contract itself required a 70% joint efficiency standard.

Petrocon delivered a vessel which met the 70% joint weld efficiency standard. The vessel passed a hydrostatic test on August 28, 1998, which parties agree is the method for determining if a vessel passes the 70% standard. Although the plaintiff claims the quality of the welds was bad, it makes no claim and produces no evidence that the vessel did not meet the 70% joint efficiency standard. The results of the hydrostatic test are undisputed and no contrary evidence has been produced, therefore, this court finds that the vessel met the 70% joint efficiency standard proscribed by the contract.

Petrocon claims MAC breached the contract by not performing radiography tests. However, an analysis of such a claim mirrors the above outcome. First, MAC always maintained that it would do a hydrostatic test. Second, the final engineering drawing signed on June 29, 1998, showed that no radiography was required. Third, the industry test to determine if a 70% joint efficiency threshold is met is the hydrostatic test. Finally, a Petrocon representative, Mr. Rutherford was present when the hydrostatic test was performed. The contract between Petrocon and MAC did not require radiography. The fact that MAC took two x-rays of the vessel before delivery does not change the requirements under the contract. The x-rays showed no problem with the sufficiency of the welds and the vessel passed the hydrostatic test. MAC did not breach the contract by not performing complete radiography tests because the contract did not require radiography.

MAC constructed a vessel that met the specifications of the contract. A 70% joint efficiency was required by the final engineering drawing signed by Petrocon's representative. MAC delivered a vessel which passed a hydrostatic test, the industry standard for determining a vessel meets the 70% joint efficiency threshold. The court finds MAC delivered a vessel which met the requirements of the contract. Although meritorious, the additional reason proposed for summary judgment by MAC on the contract claim, that Petro-

con accepted delivery of the vessel, need not be addressed. Because the contract called for a vessel with 70% joint efficiency, and such a vessel was delivered, summary judgment against Petrocon's breach of contract claim should be granted.

### V. Negligence and Breach of Warranty Claims

■ Petrocon claims that MAC was negligent in its construction of the vessel and breached its express warranty of good workmanship. These claims can be dealt with simultaneously because the main thrust of Petrocon's negligence claim is that MAC used improper workmanship. This court has determined that the contract was for a vessel with a joint efficiency standard of 70% and that Petrocon received a vessel which met this standard. Therefore, although Petrocon argues that the welds were defective and sub-standard, they were actually standard because they passed the test for the 70% standard. The plaintiffs also claim negligence and breach of warranty for inadequate materials, but there is absolutely no evidence that suggests the materials used were inadequate. In fact, when Petrocon's inspector, Mr. Rutherford, performed a review of the materials during the manufacturing process on August 8, 1998, his report stated, "All aspects of this initial visit were satisfactory." Petrocon received what it contracted for, a vessel that had a joint efficiency standard of 70%. Therefore, there was no breach of warranty, express or implied, and MAC was not negligent in its manufacture of the vessel. Summary judgment should be granted to MAC on these claims.

### VI. Constructive Fraud Claim

■ "Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Rio Grande* *Valley Gas Co. v. City of Edinburg*, 59 S.W.3d 199, 209 (Tex.App.-Corpus Christi Dec 21, 2000), referencing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964). Petrocon has not pled the necessary elements for constructive fraud, specifically, they have not pled that MAC owed to them a legal or equitable duty. In addition, no action of MAC pertaining to the present case could be interpreted as having a tendency to deceive others, violate the confidence, or injure the public interest. Therefore summary judgment should be granted to MAC on the constructive fraud claim.

### VII. Conclusion

Pursuant to the above opinion, the court finds there are no genuine issues as to any material fact relevant to this summary judgment decision, and is of the opinion that summary judgment should be GRANTED on all claims. It is therefore ORDERED,

Defendant's motion for summary judgment is GRANTED, and the suit is hereby dismissed with prejudice.